**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **JENNIFER S. S.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 25-CV-258-JFJ** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**OPINION AND ORDER**

Plaintiff Jennifer S. S. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423. In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I. General Legal Standards and Standard of Review**

"Disabled" is defined under the Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). A medically determinable impairment "must be established by objective medical evidence," such as medical signs and laboratory findings, "from an acceptable medical source,"

such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion [is not sufficient] to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity ("RFC"), whether the impairment prevents the claimant from continuing his past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies his burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance "and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* at 1262. A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

**II. Procedural History and the ALJ's Decision**

Plaintiff, then a 41-year-old female, applied for Title II disability insurance benefits on December 1, 2022, alleging a disability onset date of November 1, 2021. R. 97. Plaintiff claimed she was unable to work because she suffered from "chronic obstructive pulmonary disease (COPD), vertigo, migraine headaches, foot and ankle deformities, syringomyelia, syringobulbia, myalgia, myositis, chest pain, chondroblastoma. irritable bowel syndrome (IBS) and gastroesophageal reflux disease (GERD)." *Id.* Plaintiff's claim for benefits was denied initially and on reconsideration. R. 145-46, 159-60. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted a telephonic hearing on May 21, 2024. R. 47-48, 76-96. The ALJ issued a decision on July 9, 2024, denying benefits and finding Plaintiff not disabled because she could

perform other work existing in the national economy. R. 67-68. The Appeals Council denied review, and Plaintiff appealed to this Court. R. 1-4; ECF No. 2.

The ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2027. R. 58. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 1, 2021. *Id.* At step two, the ALJ found that Plaintiff had the following severe impairments: effusion to the bilateral feet; status post proximal phalangeal osteotomy of the left hallux with residuals; status post Lapidus bunionectomy to the right foot with residuals; asthma; and chronic obstructive lung disease. *Id.* The ALJ found that Plaintiff had non-severe impairments of: right shoulder sprain; hypertension; dyshidrotic eczema to the hands; obesity; migraines; and depression. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 58, 60. In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. R. 60.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform sedentary work with the following limitations:

> The claimant is able to lift or carry, push or pull ten pounds occasionally and less than ten pounds frequently. The claimant can sit for six hours out of an eight-hour day, and stand or walk a combined total of two hours out of an eight-hour day. The claimant should avoid climbing ladders, ropes, or scaffolds. The claimant should avoid concentrated exposure to fumes, odors, dusts, gasses, or other similar respiratory irritants.

R. 61. At step four, the ALJ found that Plaintiff was unable to perform her past relevant work as a teacher assistant and resident care aide. R. 67. At step five, based on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff could perform other occupations existing in significant

numbers in the national economy, such as circuit board assembler; order clerk, food and beverage; and ticket checker. R. 68. The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). *Id.* Based on the VE's testimony, the ALJ concluded these positions existed in significant numbers in the national economy. *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled.

## III. Issues

Plaintiff raises one point of error in her challenge to the denial of benefits, which the court construes as two for clarity: (1) the assigned RFC does not account for Plaintiff's severe impairment of bilateral lower extremity effusion and is not supported by a narrative discussion; and (2) the ALJ improperly rejected Plaintiff's testimony regarding the severity of her foot swelling due to her bilateral lower extremity effusion.[1] *See* ECF No. 11 at 3-15.

## IV. Analysis

### A. RFC Is Supported by Substantial Evidence and a Narrative Discussion

Plaintiff contends that, "[b]ecause the ALJ found swelling of the bilateral feet severe, any respective limitations caused by this impairment should have been incorporated into the RFC." ECF No. 11 at 4. Plaintiff also asserts that the RFC was not supported by a sufficient narrative discussion.

A claimant's RFC is his "*maximum* remaining ability to do sustained work activities in an ordinary work setting" for 8 hours a day, 5 days per week despite his medical impairments and symptoms. Social Security Ruling ("SSR") 96-8p, at *2. In assessing the RFC, the ALJ must

---

[1] In a single sentence, Plaintiff argues that "the ALJ rejected every medical opinion of record[] and set forth his own findings." Because Plaintiff failed to elaborate on or provide any example of that alleged error, the Court does not address it. *See Femedeer v. Haun*, 227 F.3d 1244, 1255 (10th Cir. 2000) ("Perfunctory complaints that fail to frame and develop an issue are not sufficient to invoke appellate review.").

"include a narrative discussion describing how the evidence supports each conclusion" as to the claimant's work-related limitations. *Id.* at *7. In other words, the ALJ must explain the basis for the limitations included in the RFC assessment with citations to "specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* Additionally, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence . . . were considered and resolved." *Id.* If the RFC conflicts with a medical source opinion, the ALJ must "explain why the opinion was not adopted." *Id.*

The ALJ sufficiently considered and discussed the record, and the RFC is supported by substantial evidence. In finding that Plaintiff could perform a reduced range of sedentary work, the ALJ discussed (1) Plaintiff's testimony regarding her bilateral foot effusion symptoms; (2) Plaintiff's level of edema post-surgery and outside of the recovery period; (3) Plaintiff's longitudinal medical record of her lower extremities; and (4) a third-party function report by Plaintiff's spouse regarding the severity of Plaintiff's symptoms.

Plaintiff's testimony that the ALJ recited and considered regarding her bilateral foot effusion symptoms included: Plaintiff "stopped working because she had difficulty being on her feet"; she "has swelling to her feet"; she "can walk for probably 100 feet"; she "can stand for probably 15 minutes"; she "elevates her feet in the bed"; "[w]hile sitting, her feet will start to swell after 30 minutes"; she "sits in a recliner to relieve her pain"; and she "will elevate her legs for about 45 minutes." R. 62. The ALJ held that those statements were "not entirely consistent with the medical evidence and other evidence in the record," and that the RFC was "supported by the objective medical evidence," which demonstrated a lack of swelling. R. 62. As to edema, the ALJ analyzed approximately fifteen medical appointments from November 2, 2021, until May 7, 2024, which showed that Plaintiff had either no swelling, drainage, edema, or erythema; or mild swelling,

drainage, edema, or erythema after a surgical procedure, which was "expected at that point of the surgical healing spectrum." R. 62-66. At multiple medical appointments for her feet from 2022 until 2023, Plaintiff noted that she was "feeling better"; "her pain had improved since her surgery, which she rated at 0-1/10"; she denied "changes in muscle strength[] or an inability to currently perform activities of daily living"; and she denied "unilateral muscle weakness/loss of strength, incoordination, imbalance, or gait disturbance." R. 63-65. The ALJ addressed the physical capacity of Plaintiff's extremities by stating that Plaintiff's "longitudinal record reflects that the claimant has a normal range of motion to all extremities, normal muscle strength, no gross sensory deficits, no acute fracture or dislocation to her right foot, [and] a stable left foot." R. 66. The ALJ further stated that he considered a third-party function report completed by Plaintiff's husband, but stated that it was "not consistent with the severity of symptoms and resulting functional limitation described." *Id.* The ALJ concluded that, based on the medical evidence of record, Plaintiff was capable of performing work-related activities within the assigned RFC "without experience[ing] significant exacerbation of her symptoms." R. 62, 66.

The ALJ also explained why he chose to limit the RFC further than the state agency physicians' opinions that Plaintiff could perform light work. R. 66. He stated that "the September 27, 2022[,] examination of Dr. McArdle showed that the claimant had tenderness to palpation at the 2nd metatarsal head and neck and at the ATFL right foot and ankle." *Id.* Additionally, the ALJ concluded that the "opinions of the state agency physicians [were] inconsistent with the May 7, 2024[,] examination of Dr. Underwood that showed the claimant had tenderness to palpation over the distal third of fourth metatarsal area." *Id.* The ALJ explicitly linked the evidence in the record to the decisional RFC, and the ALJ's conclusions are supported by substantial evidence. The ALJ provided a sufficient narrative discussion.

Plaintiff also argues that the ALJ's limitations to the sedentary RFC "errantly increased the amount of sitting activities [Plaintiff] would be required to perform." ECF No. 11 at 8. Plaintiff contends that the RFC failed to account for her "inability to work as a result of her unrelenting swelling of her lower extremities" when sitting, standing, and walking. *Id.* Sedentary work "demands a sitting capacity of up to 6 hours of an 8-hour day," but Plaintiff contends she must elevate her legs after sitting for 30 minutes. *Id.* Plaintiff's only evidence for such debilitating swelling is her testimony, which the ALJ found inconsistent with and unsupported by the objective medical evidence, as outlined below in Section IV.B. The fact that an impairment is severe does not dictate what limitations an ALJ must impose. *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) ("[A] finding of severe impairments (which is made at step two) does not require the ALJ to find at step five that the claimant did not have the residual functional capacity to do any work."); *Johnson v. Berryhill*, 679 F. App'x 682, 687 (10th Cir. 2017) ("[A] finding that an impairment is severe at step two is not determinative of the claimant's RFC. . . .").

There was no objective medical evidence in the record that indicated Plaintiff required limitations on the RFC to account for foot swelling. *See* R. 62-66. The ALJ rejected the state agency physicians' opinions that Plaintiff was capable of light work because of medical evidence showing tenderness to palpation at her feet and ankles, which is distinct from swelling. R. 66. Notably, at the appointment showing that Plaintiff had tenderness to palpation, the medical provider noted that Plaintiff's feet and ankles were "without erythema or swelling." *Id.* The ALJ did not err by restricting Plaintiff to a sedentary RFC without limitations on the time she is required to sit.

**B. ALJ's Consistency Analysis Was Supported by Substantial Evidence**

Plaintiff argues that the ALJ improperly rejected her testimony, which allegedly demonstrated "why [Plaintiff] was unable to work due to the swelling of the lower extremities, and then failed to explain how this impairment was fully accounted for in the RFC." ECF No. 11 at 4. Plaintiff also contends that the ALJ rejected her testimony because it was not consistent with the record but erred because he did not provide examples of such inconsistency. *Id.* at 10.

In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record. SSR 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016). If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3).[2] Consistency findings are "peculiarly

[2] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). As long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (citation modified). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

Here, the ALJ's decision adequately accounted for Plaintiff's symptoms and included multiple examples of where Plaintiff's testimony was inconsistent with the medical record. The ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms . . . ." R. 62-66 (relying on statements made by Plaintiff at the May 2024 hearing, medical appointment treatment notes from November 2021 through May 7, 2024, and Plaintiff's husband's Third-Party Function Report). However, the ALJ found that Plaintiff's statements "concerning the intensity, persistence, and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." R. 62.

That conclusion was based on sufficient consideration of the record evidence by the ALJ. The ALJ thoroughly discussed Plaintiff's medical treatment history, including the findings by her medical providers, and her subjective complaints to those providers, as explained above in Section IV.A. R. 62-66. The treatment notes by Plaintiff's medical providers showed a lack of foot swelling, contrary to Plaintiff's contentions. The ALJ noted that Plaintiff did not complain to her medical providers that she was suffering from foot swelling that required her to elevate her feet after sitting for a certain amount of time. *Id.* The ALJ also stated that Plaintiff did not take medication for that issue. *Id.* The ALJ explained that, when Plaintiff had surgery on her feet, the

level of edema in her feet was mild and "expected at that point in the healing spectrum." R. 62-63. Subsequent to surgery, Plaintiff's level of edema decreased. R. 62-66. Based on the record, the ALJ determined that Plaintiff's subjective complaints about the swelling of her feet were unsupported by and inconsistent with the objective medical evidence in the record. Instead, the record supported the assigned RFC. The ALJ's evaluation of the objective medical evidence in relation to Plaintiff's subjective statements was adequate under 20 C.F.R. § 416.929.

## V. Conclusion

The Commissioner's decision finding Plaintiff not disabled is **AFFIRMED**.

**SO ORDERED** this 9th day of September, 2026.

Jodi F. Jayne

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**